## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

SKS CONSTRUCTION, INC.                                Case No. 21-31862-KLP

                                                      Chapter 11

            Debtor.
_____/

### Plan of Reorganization for
### SKS Construction, Inc.
### September 7, 2021

#### A.        Description and History of the Debtor's Business

SKS Construction, Inc. ("SKS") is a Virginia corporation with its principal office located in Spotsylvania County, Virginia. Founded in 1993, SKS is a privately owned construction company and its main lines of business include excavation, site development, underground utilities, and general construction.

#### B.        Liquidation Analysis

To confirm this Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Claim Holders would receive in a Chapter 7 liquidation. As set forth on the Liquidation Analysis, attached as Exhibit A, the liquidation value of the Debtor's assets totals $1,410,024. Secured claims total $1,291,169.11, leaving approximately $118,855.56 available for unsecured creditors. Even without factoring in administrative claims, the priority claims of the I.R.S. and County of Spotsylvania, which total $212,486.95, far exceed this amount. As such, unsecured nonpriority creditors would stand to receive nothing in Chapter 7. By contrast, the Plan provides for payment to unsecured nonpriority creditors of at least 11%.

#### C.        Ability to Make Future Plan Payments without Further Reorganization

The Debtor maintains that it will have enough Cash over the life of the Plan to make the required Plan payments as demonstrated on the projected financial information attached as Exhibit B. The financial projections show that the Reorganized Debtor will have projected Available Cash of approximately $1,508,278 and Disposable Income through 2026 of approximately $3,660.52. The final Plan payment is expected to be paid 60 months following the effective date of the plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan under Chapter 11 of the Bankruptcy Code proposes to pay the Debtor's Creditors through (a) Available Cash and (b) Disposable Income through August 31, 2026.

This Plan provides for:      8 Classes of Secured Claims;
                             1 Class of General Unsecured Claims; and
                             1 Class of Equity Security Holders.

All Creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their Claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | Class 1 shall consist of the Secured Claim of Blue Ridge Bank. |
| 2.02 | **Class 2** | Class 2 shall consist of the Secured Claim of Small Business Administration |
| 2.03 | **Class 3** | Class 3 shall consist of the Secured Claim of CAT Financial. |
| 2.04 | **Class 4** | Class 4 shall consist of the four (4) Secured Claims of Ford Motor Credit. |
| 2.05 | **Class 5** | Class 5 shall consist of the Secured Claim of Komatsu Financial. |
| 2.06 | **Class 6** | Class 6 shall consist of the Secured Claim of M&T Bank. |
| 2.07 | **Class 7** | Class 7 shall consist of the Secured Claim of Takeuchi Financial. |
| 2.08 | **Class 8** | Class 8 shall consist of the Secured Claim of Wells Fargo Bank. |
| 2.09 | **Class 9** | Class 9 shall consist of all Holders of non-priority General Unsecured Claims Allowed under § 502 of the Code. Attached as Exhibit C is a listing of all potential Claims in the Class. |
| 2.10 | **Class 10** | Class 10 shall consist of Steven Zuchowski and John Zuchowski as the Equity Security Holders of SKS. |

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01 **Unclassified Claims**

Pursuant to § 1123(a)(1), Administrative Expense Claims, and Priority Tax Claims are not in Classes.

3.02 **Administrative Claims and Fee Claims**

Provided that (a) proof/request of Administrative Expense Claim has been filed on or before the Administrative Claims Bar Date and (b) an Administrative Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing.

Persons seeking an award by the Bankruptcy Court of a Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court: (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than thirty (30) days after the Effective Date; and (ii) except as otherwise provided in the Plan, be paid in full in such amounts as are approved by the Bankruptcy Court upon the later of (a) the date upon which the Order relating to any such Fee Claim is entered or (b) upon such other terms as may be mutually agreed upon between the Holder of such Fee Claim and the Debtor. Fee Claims incurred after the Effective Date through the Final Distribution Date are subject to Court approval and Allowed Claims will be paid from Available Cash, and, if necessary, from Disposable Income.

**Compensation of Subchapter V Trustee**

Under § 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the plan is confirmed:

a. The Subchapter V Trustee compensation is estimated to be $4,000.00 through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the

application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

b. If the plan is confirmed as a consensual plan in accordance with § 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the plan under §1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the effective date of the plan, unless the Subchapter V Trustee agrees to a different treatment.

c. If the plan is confirmed on a non-consensual basis under § 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the plan.

| 3.03 | **Priority Tax Claims** | While not separately classified, the Debtor is aware of priority tax claims filed by the Internal Revenue Service ($144,568.74) and Spotsylvania County ("S.C.") ($42,918.21). While S.C.'s claim covered only the period January thru December 2020, the Debtor has also provided in the plan for repayment of the personal property tax due for the first half of 2021, (approximated at $18,000) since that sum is also a "pre-petition" tax claim. Both tax claims shall be repaid in full over a period not to exceed 60 months from the tax due dates, as shown in Exhibit B. |
|---|---|---|
| 3.04 | **Statutory Fees** | Any fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. The Debtor is aware of no such amounts due and owing given that 28 U.S.C. 1930(a)(6)(A) specifically excludes fees for cases under Subchapter V of the Bankruptcy Code. |

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 **Claims and Equity Interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Secured Claim of Blue Ridge Bank** | ☒Impaired ☐Unimpaired | Class 1 shall consist of the outstanding balance of the Secured Claim of Blue Ridge Bank. This balance, per the proof of claim filed on 8/18/21, is $905,328.29. The Debtor and Blue Ridge Bank entered into a cash collateral agreement which provided for monthly payments of $2,000.00 during the months of August through October of 2021 and for certain other relief [see cash collateral motion filed on 7/30/21 (doc. #35)]. Beginning in November of 2021, the Debtor shall make interest only payments at the default rate, for six (6) consecutive months, of approximately $5,000 per month, with subsequent payments of principal and interest at the contract rate (approximately $13,478.73 per month), through 10/25/26, at which the entire note balance shall be due in full. All other terms of the relevant loan and security agreements, as well as the cash collateral agreement, are incorporated by reference and Blue Ridge Bank shall have liens on all of its collateral and replacement collateral until the loan is paid in full. |
| **Class 2 – Secured Claim of Small Business Administration ("S.B.A.")** | ☒Impaired ☐Unimpaired | Class 2 consists of the outstanding balance as of the Confirmation Date of the S.B.A. The outstanding balance of this claim, per the proof of claim filed on 7/21/21, is $155,486.30. S.B.A. is secured by a lien on all assets of the Debtor, except real property. S.B.A. shall maintain its lien until the loan is paid in full. Debtor will re-amortize the loan over 30 years, at 3% interest, with monthly payments in the amount of $655.54 to start in the month following the Effective Date. All other terms of the relevant loan and security agreements, other than the term and interest rate, shall remain in effect and are incorporated by reference. |
| **Class 3 – Secured Claim of CAT Financial ("CAT")** | ☒Impaired ☐Unimpaired | Class 3 consists of the outstanding balance as of the Confirmation Date of the Allowed Secured Claim of CAT. The outstanding balance of this claim, per the proof of claim filed on 7/27/21, is $75,067.21. CAT's claim is secured by a CP56B Roller, with the Model/Serial No. CP56B/LH00461. The Debtor and CAT, through CAT's counsel, agreed that the Debtor would begin making monthly payments to CAT of $1,500.00, commencing in |

September 2021, at an interest rate of $5.25%, until the debt is paid in full. CAT shall have a lien on the CP56B Roller until the loan is paid in full. All other terms of the relevant loan and security agreements, other than the monthly payment and interest payment, shall remain in effect and are incorporated by reference.

**Class 4 - Secured Claims of Ford Motor Credit ("FMC")**

☒Impaired
☐Unimpaired

Class 4 consists of the outstanding balances of the Allowed 4 Secured Claims of FMC. There are 4 separate secured loans, each secured by a separate vehicle. The Debtor and FMC agreed that with respect to each loan, regular monthly payments would resume in August of 2021, in accordance with the loan terms. The parties further agreed that arrearages on each of the 4 loans would be paid over 6 months, *pro rata*, beginning in the month following confirmation of the Plan. The 4 vehicles are: 2014 F-15, 2016 F-150, 2017 F-150 and 2020 Ford Explorer. On August 12, 2021, Consent Orders were entered approving the terms of these agreements (see docket entries 41 and 42) and the terms of those Orders are incorporated herein. All other terms of the relevant loan and security agreements are incorporated by reference and FMC shall have liens on the vehicles until the loans are paid in full. The payments will be as follows: (i) 2014 F-150 - $983.52 for 6 months, then regular payments of $728.26; (ii) 2016 F-150 - $1,117.00 for 6 months, then regular payments of $822.58; (iii) 2017 F-150 - $1,126.27 for 6 months, then regular payments of $829.15; and (iv) 2020 Explorer - $1,192.88 for 6 months, then regular payments of $889.10. The Debtor also leases a vehicle from FMC and that claim is addressed in section 6.01 of the Plan.

**Class 5 - Secured Claim of Komatsu Financial ("Komatsu").**

☒Impaired
☐Unimpaired

Class 5 consists of the outstanding balance, per the Debtor's bankruptcy schedules, of the secured claim of Komatsu. Komatsu did not file a proof of claim; however, the Debtor believes that Komatsu's Claim totals $14,173.00 and is properly secured by a Topcon Laser. The Debtor will pay the claim in full, amortized over 45 months at 5.5%, with monthly payments of $349.27, to begin in the month following the Effective Date. All other terms of the relevant loan and security agreements, other than the monthly payment and interest payment, are incorporated by reference. Komatsu shall have a lien on the Topcon Laser until the loan is paid in full

| | | |
|---|---|---|
| **Class 6 - Allowed Secured Claim of M&T Bank ("M&T").** | ☒Impaired<br>☐Unimpaired | Class 6 consists of the outstanding balance as of the Confirmation Date of the Allowed Secured Claim of M&T. The outstanding balance of this claim, per the proof of claim filed on 8/17/21, is $30,621.0. The Claim is properly secured by a 2016 Chevrolet Silverado truck, title no. 1GB4KZCG5GF209089. The Debtor will pay the claim in full, amortized over 55 months at 4.5%, with monthly payments of $617.17, to begin in the month following the Effective Date. All other terms of the relevant loan and security agreements, other than the monthly payment and interest payment, shall remain in effect and are incorporated by reference. M&T shall have a lien on the truck until the loan is paid in full. |
| **Class 7 - Allowed Secured Claim of Takeuchi Financial ("Takeuchi")** | ☒Impaired<br>☐Unimpaired | Class 7 consists of the Allowed Secured Claim of Takeuchi. On information and belief, that claim has been fully satisfied by the surrender of the collateral securing Takeuchi's claim, a 2018 TL 12 TB2150 excavator. Takeuchi did not file a proof of claim. |
| **Class 8 - Allowed Secured Claim of Wells Fargo Bank ("Wells Fargo")** | ☒Impaired<br>☐Unimpaired | Class 8 consists of the outstanding balance as of the Confirmation Date of the Allowed Secured Claim of Wells Fargo. The outstanding balance of this claim, per the proof of claim filed on 7/27/21, is $19,994.03. Wells Fargo's claim is secured by a Trench Roller, model # RTLx-SC3, with the Serial No. 24433252. The Debtor and Wells Fargo have agreed that the regular monthly payments of $602.23 would resume in August of 2021, in accordance with the loan terms. The parties further agreed that arrearages would be paid over 6 months, *pro rata*, beginning in the month following confirmation of the plan, at the rate of $802.98 per month. All other terms of the relevant loan and security agreements are incorporated by reference and Wells Fargo shall have a lien on the Trench Roller until the loan is paid in full. |
| **Class 9 - Non-Priority General Unsecured Claims** | ☒Impaired<br>☐Unimpaired | Class 9 consist of non-priority general unsecured claims. Class 9 claimants shall receive a *pro rata* distribution of no less than eleven percent (11%) of the total claims ($1,220,967.65) in the class, or $6,715.33over 20 quarters. |
| **Class 10 – Equity Security Interests** | ☐Impaired<br>☒Unimpaired | John and Steven Zuchowski shall retain their Equity Interests (51% and 49%, respectively) in the Debtor. |

### Article 5: Allowance and Disallowance of Claims

5.01 **Disputed Claim**   A *Disputed Claim* is a Claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

       (i)    a Proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

       (ii)   no Proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.

All objections to Proofs of Claim shall be filed on or before 30 days from the later of (1) the Effective Date or (2) the filing of the respective Proof of Claim (and/or amendments of the same). The Debtor has objected to the claims of Brookwood Development Corporation (claim #24) and Walnut Hill Development Corporation (claim #25) and is not providing for payment of either claim in the Plan. In the event that either or both claims are ultimately allowed, by final order of the Bankruptcy Court, the claim or claims shall be paid *pro rata* at the same rate as other Class 9 claim, which will lower to overall percentage paid to the Class 9 claims by a corresponding amount.

5.02 **Delay of Distribution on a Disputed Claim**   No distribution will be made on account of a Disputed Claim unless such claim is allowed by a Final Order.

5.03 **Settlement of Disputed Claims**   The Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Executory Contracts and Unexpired Leases**   Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all Executory Contracts and unexpired leases between the Debtor and any party shall be deemed assumed as of the Effective Date, except for any Executory Contracts and unexpired leases which have previously been rejected pursuant to an order of the Court. The Debtor is party to a vehicle lease with FMC and this will be assumed and treated similarly to the FMC vehicles addressed in section 4.01 – namely, the Debtor will pay $1,192.88 for 6 months following confirmation followed by regular monthly payments of $754.20 thereafter.

A Proof of Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after entry of the Confirmation Order.

### Article 7: Means for Implementation of the Plan

| | | |
|---|---|---|
| 7.01 | **Plan Payments/ Vesting of Property** | Payments under the Plan will be made with (a) Available Cash and (b) Debtor's Disposable Income as provided above. On the Effective Date, all other Estate property shall revest in the Reorganized Debtor |
| 7.02 | **Exemption from Transfer and Recordation Taxes** | Pursuant to Bankruptcy Code § 1146(a), any transfers from any Debtor and/or the Reorganized Debtor to any Entity, pursuant to this Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. |
| 7.03 | **Effectuating Documents and Further Transactions** | The Debtor and/or Reorganized Debtor shall be authorized to execute, deliver, file, or record such stipulations, contracts, leases, amendments, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.<br><br>In addition, the Debtor, upon the Confirmation Order becoming a Final Order, may without further notice or order refinance and/or sell to one or more entities any of the Assets. |
| 7.04 | **Causes of Action and Avoidance Actions** | Except as expressly set forth in this subsection, all Causes of Action of the Debtor shall be preserved. |
| 7.05 | **Preservation of Priority** | Notwithstanding the occurrence of the Effective Date, all Allowed Claims, including without limitations Allowed Administrative Claims, shall retain their respective priority under the Bankruptcy Code and applicable non-bankruptcy law. |
| 7.06 | **Bar Date** | Any Claim in existence as of the Petition Date that is not scheduled by the Debtor, or that is scheduled as contingent, unliquidated, or disputed, or that varies in amount, nature, or priority from that |

stated in the Debtor's Schedules, must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court. Unless otherwise specifically ordered by the Court, such Proof of Claim must have been filed with the Bankruptcy Court no later than the Claims Bar Date. **Absent further order of the Bankruptcy Court, the failure to file a Proof of Claim by the Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtor from any liability, responsibility, or obligation with respect to such Claim. Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Claim that is not filed by the Claims Bar Date. The Debtor shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed Proof of Claim.**

7.07    Delivery of Distributions and Undeliverable or Unclaimed Distributions Assuming a Consensual Plan

7.08.a **Delivery of Distributions in General**    Distributions to Holders of Allowed Claims shall be made by the Debtor (a) at the addresses set forth on the Proofs of Claim filed by such Holders, (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer. Distributions shall be made in accordance with the terms of this Plan. In making Distributions under this Plan, the Debtor may rely upon the accuracy of the claims register maintained in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court allowing or disallowing Claims in whole or in part.

7.08.b **Undeliverable and Unclaimed Distributions**    If the Distribution to any Holder of an Allowed Claim is made in accordance with this Plan and is returned to the Debtor as undeliverable or is otherwise unclaimed within sixty (60) days following such Distribution, such Distribution may be cancelled and the Debtor and/or Reorganized Debtor shall be relieved of any and all obligations to make further Distributions to such Holder. Any Holder of an Allowed Claim that does not timely negotiate any payment made pursuant to this Plan shall be deemed to have forfeited its Claim and shall be forever barred and enjoined from

asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor and its Estate, and its agents, attorneys, representatives, employees, or independent contractors, and/or any of its property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become property of the Debtor, free of any restrictions thereon, and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim; provided, however, that in their sole discretion, the Debtor may take such other action as the Debtor deems appropriate to locate Holders of Allowed Claims.

| | | |
|---|---|---|
| 7.09 | **Prepayment** | Except as otherwise expressly provided in this Plan or the Confirmation Order, the Debtor and/or Reorganized Debtor shall have the right to prepay, without penalty, all, or any portion of an Allowed Claim, at any time. |
| 7.10 | **Means of Cash Payment Assuming a Consensual Plan** | Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made on, and after the Effective Date, at the option and in the sole discretion of the Debtor and/or the Reorganized Debtor by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor. |
| 7.11 | **Interest on Claims** | Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of an Allowed Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Unless otherwise specifically provided for in this Plan or the Confirmation Order or the interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. |
| 7.12 | | Procedure for Treating and Resolving Disputed, Contingent, and/or Unliquidated Claims. |
| 7.13.a | **No Distributions on Disputed Claims** | Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim |

which the Debtor do not dispute at the time and in the manner that the Debtor makes Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan.

7.13.b  **Distributions on Allowed Claims**   Payments and Distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of this Plan that govern Distributions to such Holders. Except as otherwise provided in this Plan, on the earlier of (a) the Distribution Date following the date when a Disputed Claim becomes an Allowed Claim or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Debtor will distribute to the Holder any Cash from that would have been distributed on the dates Distributions were previously made to Holders had such Allowed Claim been an Allowed Claim on such dates. All Distributions made under this Article of this Plan on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

7.13.c  **De Minimis Distributions**   Except as otherwise expressly provided in this Plan, the Debtor shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00.

7.14  **Fractional Dollars**   Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### Article 8: General Provision

8.01  **Definitions and Rules of Construction**   The definitions and rules of construction set forth in §§ 101, 1182, and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1.1. ***Administrative Claim and/or Administrative Expense Claim***
mean a Claim, other than a Fee Claim for costs and expenses
of administration of this Chapter 11 Case under Bankruptcy
Code §§ 503(b), 507(b), or 1114(e)(2), and entitled to priority
under Bankruptcy Code § 507(a)(2), including: (a) any actual
and necessary costs and expenses, incurred after the Petition Date,
of preserving the Estate and operating the business of the
Debtor, (b) goods received by the Debtor within 20 days before
the date of commencement of a case under this title in which the
goods have been sold to the Debtor in the ordinary course of
business and (c) all other claims entitled to administrative claim
status pursuant to a Final Order of the Bankruptcy Court.

1.2. ***Administrative Claims Bar Date*** means the first Business Day
that is thirty (30) days following the Effective Date.

1.3. ***Allowed Claim*** means a Claim or any portion thereof (a) that
has been allowed by a Final Order of the Bankruptcy Court, (b)
that either (x) has been Scheduled as a liquidated, non-contingent,
and undisputed Claim in an amount greater than zero on the
Schedules, or (y) is the subject of a timely filed Proof of Claim as
to which either (i) no objection to its allowance has been filed
(either by way of objection or amendment to the Schedules) within
the periods of limitation fixed by the Bankruptcy Code or by any
order of the Bankruptcy Court or (ii) any objection to its allowance
has been settled, waived through payment, or withdrawn, or has
been denied by a Final Order, or (c) that is expressly allowed in a
liquidated amount in this Plan; provided, however, that with
respect to an Administrative Claim, "Allowed Claim" means an
Administrative Claim as to which a timely written request for
payment has been made in accordance with applicable bar dates
for such requests set by the Bankruptcy Court (if such written
request is required) in each case as to which the Debtor, or any
other party in interest (x) has not interposed a timely objection or
(y) has interposed a timely objection and such objection has been
settled, waived through payment, or withdrawn, or has been denied
by a Final Order; provided, further, however, that for purposes of
determining the status (i.e., Allowed or Disputed) of a particular
Claim prior to the expiration of the period as may be fixed for filing
objections to the allowance or disallowance of Claims, any such
Claim which has not been previously allowed or disallowed by a
Final Order of the Bankruptcy Court or this Plan shall be deemed
a Disputed Claim unless such Claim is specifically identified by
either Debtor as being an Allowed Claim.

1.4. ***Assets*** means all tangible and intangible assets of every kind and nature of the Debtor and its Estates, and all proceeds thereof, existing as of the Effective Date.

1.5. ***Avoidance Actions*** means Causes of Action arising under Bankruptcy Code §§ 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

1.6. ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject this Plan.

1.7. ***Bankruptcy Case*** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court and referenced as Chapter 11 case number 21-31862-KLP.

1.8. ***Bankruptcy Code and/or Code*** means Title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

1.9. ***Bankruptcy Court and/or Court*** means the United States Bankruptcy Court for the Eastern District of Virginia, or any other court with jurisdiction over the Chapter 11 Case.

1.10. ***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, and as applicable to this Chapter 11 Case or proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

1.11. ***Business Day*** means any day, other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

1.12. ***Cash*** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

1.13. ***Claim*** means as set forth in Bankruptcy Code § 101(5).

1.14. ***Claims Bar Date*** means the bar date for filing Proofs of Claim for Claims arising prior to the Petition Date against the

Debtor, which date was August 18, 2021, with respect to Claims of Non-Governmental Units.

1.15. *Class* means a category of Holders of Claims or Interests, as described in Article 2 hereof.

1.16. *Collateral* means any property or interest in property of the Debtor's Estates subject to a Lien to secure the payment or performance of a Claim.

1.17. *Confirmation* means entry by the Bankruptcy Court of the Confirmation Order.

1.18. *Confirmation Date* means the last date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in this Chapter 11 Case.

1.19. *Confirmation Hearing* means the hearing held by the Bankruptcy Court to consider Confirmation of this Plan as such hearing may be adjourned or continued from time to time.

1.20. *Confirmation Order* means the order entered by the Bankruptcy Court Confirming this Plan under Bankruptcy Code §§ 1129 and 1191 in the Chapter 11 Case.

1.21. *Consummation or Consummate* means the occurrence of, or to achieve, the Effective Date.

1.22. *Contingent* means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

1.23. *Creditor* means any Entity that holds a Claim against the Debtor.

1.24. *Debtor* means SKS Construction, Inc.

1.25. *Disallowed* means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Claims Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Claims Bar Date or deemed

timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

1.26. *Disposable Income* means as defined at § 1191 of the Code.

1.27. *Distribution* means any distribution pursuant to this Plan to the Holders of Allowed Claims.

1.28. *Distribution Amount* means the yearly amount available for payments under the Plan for Class 9, which is Disposable Income less amounts for payment of Allowed Fee Claims, Allowed Administrative Claims, and Allowed Claims in Classes 1 through 8.

1.29. *Distribution Date* means, the Initial Distribution Date, the date on which any subsequent yearly Distribution occurs.

1.30. *Effective Date* means the Business Day this Plan becomes effective as provided in Article 8.02 hereof.

1.31. *Entity* has the meaning set forth in Bankruptcy Code § 101(15).

1.32. *Equity Security* has the meaning set forth in Bankruptcy Code § 101(16).

1.33. *Estate* means the estate of the Debtor created under Bankruptcy Code § 541 as modified in § 1186.

1.34. *Exhibit* means an exhibit annexed to this Plan.

1.35. *Fee Claim* means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date including amounts owed to Spiro & Browne, PLC and/or the Sub Chapter V Trustee.

1.36. *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

1.37. ***Final Distribution Date*** means the date on which the Debtor has completed the Distributions of Distribution Amounts under the Plan.

1.38. ***Final Fee Applications*** means the final requests for payment of Fee Claims.

1.39. ***Final Order*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal pursuant to Bankruptcy Rule 8002 or seek review or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.40. ***General Unsecured Claim*** means a Claim that is not an Administrative Claim, a Fee Claim, a Secured Claim, a Priority Tax Claim, or a Non-Tax Priority Claim.

1.41. ***Governmental Unit*** has the meaning set forth in Bankruptcy Code § 101(27).

1.42. ***Holder*** means an Entity holding a Claim, Interest, or Equity Security.

1.43. ***Impaired*** means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or Class that is impaired within the meaning of Bankruptcy Code § 1124 of the Bankruptcy Code.

1.44. ***Initial Distribution Date*** means the Effective Date or as soon thereafter as may be reasonably practicable, but in any event no later than the fifth (5th) Business Day following the Effective Date.

1.45. ***Lien*** means as provided in § 101(37) of the Code.

1.46. ***Local Rules*** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia as now in effect a hereafter amended.

1.47. ***Personal Property*** means property that is movable, chattels or personalty.

1.48. ***Petition Date*** means June 9, 2021.

1.49. *Pre-Petition* means any time before the Petition Date.

1.50. *Pre-Petition Loan Documents* means any and all documents signed by the Debtor in connection with the granting of a security interest in Real Property or Personal Property.

1.51. *Professional* means any professional employed in the Chapter 11 Case pursuant to §§ 327, 328, or 1103 of the Bankruptcy Code, and/or the SubChapter V Trustee.

1.52. *Proof of Claim* means any document filed pursuant to Bankruptcy Code § 501(a).

1.53. *Priority Claim* means a Claim that is entitled to priority under Bankruptcy Code § 507(a).

1.54. *Reorganized Debtor* means the Debtor after the Effective Date.

1.55. *Secured Claim* means a Claim that is secured by Collateral owned by the Debtor, subject to § 506(a) of the Bankruptcy Code.

1.56. *SubChapter V Trustee* means the trustee appointed pursuant to § 1183, and in particular, Richard C. Maxwell.

1.57. *Tax Claim* means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

1.58. *Unclassified Claims* means Fee Claims and Administrative Claims.

1.59. *Unimpaired* means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is not impaired within the meaning of Bankruptcy Code § 1124.

1.60. *U.S. Trustee* means the Office of the United States Trustee for the Eastern District of Virginia.

8.02    **Effective Date**    The Effective Date of this Plan is the first Business Day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that

date, the Effective Date will be the first Business Day after the date on which the stay expires or is otherwise terminated.

8.03 **Severability**   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 **Binding Effect**   The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05 **Captions**   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 **Controlling Effect**   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Virginia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 **Retention of Jurisdiction**   Under Bankruptcy Code §§ 105(a) and 1142, and/or notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code § 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

B.   Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code §§ 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

C.     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a debtor is a party or with respect to which a debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

D.     Effectuate performance of and payments under the provisions of this Plan.

E.     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under or related to the Chapter 11 Case, this Plan, or any Plan Document;

F.     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Confirmation Order;

G.     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

H.     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

I.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

J.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

K.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

L.     Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

M.    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

N.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

O.    Hear and determine any Causes of Action;

P.    Hear and determine all disputes involving the existence, nature, or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

Q.    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

R.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

S.    Enforce all orders previously entered by the Bankruptcy Court;

T.    Dismiss the Chapter 11 Case; and

U.    Enter a final decree closing the Chapter 11 Case.

**Article 9: Discharge**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt:

(i)    imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from any debt:

(i)     on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(iii)   excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

(iv)

### Article 10: Other Provisions

10.01   **Injunction**   **EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND AFTER THE EFFECTIVE DATE ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD AS OF THE EFFECTIVE DATE CLAIMS AGAINST THE DEBTOR IS PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, ITS ESTATES, OR ANY OF ITS PROPERTY ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTOR, AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.**

10.02   **Indemnification Obligation**   Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable

organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counterparties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

| | | |
|---|---|---|
| 10.03 | **Modifications and Amendments** | The Debtor may alter, amend, or modify this Plan or any Exhibits thereto as provided under Bankruptcy Code § 1193. |
| 10.04 | **Severability of Plan Provisions** | If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, then the Bankruptcy Court, at the request of the Debtor shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. |
| 10.05 | **Successors and Assigns** | The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Entity. |
| 10.06 | **Tax Reporting and Compliance** | The Debtor is hereby authorized to request an expedited determination under Bankruptcy Code § 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date. |
| 10.07 | **Filing of Additional Documents and U.S. Trustee Reports** | On or before substantial consummation of this Plan, the Debtor shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. Until there has been substantial consummation of the Plan, the Debtor shall file quarterly reports of operations on a post-confirmation basis and in accordance with the guidelines for filing such reports, as prescribed by the Office of the United States Trustee. |

10.08 **Notice of Default under the Plan** Unless otherwise agreed, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made fifteen (15) days after written notice of the default is received by the Debtor/Reorganized Debtor. Any notice of default shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

10.09 **Termination of SubChapter V Trustee** If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the service of the SubChapter V Trustee in the Case shall terminate when the Plan has been substantially consummated, except that the United States Trustee may reappoint a subchapter V trustee as needed for performance of duties under subsection §§ 1191(b)(3)(C) and 1185(a) of the Bankruptcy Code. Otherwise, the service of the SubChapter V Trustee in the Case will be terminated as requested by the Subchapter V Trustee and ordered by the Bankruptcy Court.

10.10 **Service of Notice of Substantial Consummation** Not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the SubChapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

Respectfully submitted,

/s/ *Steven Zuchowski*

Steven Zuchowski,
Vice President and Debtor's Designee
SKS CONSTRUCTION, INC.

/s/ *David K. Spiro*

David K. Spiro (Va. Bar No. 28152)
David G. Browne (Va. Bar No. 65306)
SPIRO & BROWNE, PLC
6802 Paragon Place, Suite 410
Richmond, Virginia 23230
Office: (804) 441-6102
dspiro@sblawva.com

*Counsel for the Debtor*

## SKS Construction, Inc.

### Exhibit A

### Liquidation analysis

| | |
|---|---:|
| Real Property | $    180,000.00 |
| Personal Property | $ 1,582,530.84 |
| Total of all property | $ 1,762,530.84 |
| | |
| Liquidation value of equipment | $ 1,266,024.67 |
| Liquidation Value of Lot at Indian Hills | $    144,000.00 |
| Total Liquidation Value of all property | $ 1,410,024.67 |
| | |
| | |
| Less secured claim Blue Ridge Bank | $   (905,328.00) |
| Less secured claim SBA | $   (155,486.30) |
| less secured creditors | $   (230,354.81) |
| Total funds available for remaining claims | $    118,855.56 |
| | |
| Less Priority claim Spotsylvania County | $    (42,918.21) |
| less priority claim IRS | $   (144,568.74) |
| Less admin creditors | $    (25,000.00) |
| | |
| Total funds available for unsecured claims | $    (68,631.39) |

**SKS Construction, Inc.**

**Exhibit B**

| | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|
| **Construction Income** | | | | | |
| Total Income | $3,059,000.00 | $3,253,050.00 | $3,336,692.00 | $3,416,000.00 | $3,445,000.00 |
| | | | | | |
| Drafting/Engineer | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Blueprints and Reproduction | $1,800.00 | $1,500.00 | $1,500.00 | $1,800.00 | $2,000.00 |
| Bond Expense | $6,000.00 | $7,000.00 | $6,000.00 | $7,000.00 | $7,000.00 |
| Construction Materials Costs | $900,000.00 | $975,900.00 | $990,452.00 | $992,000.00 | $994,000.00 |
| Cost of Goods Sold | $10,000.00 | $10,800.00 | $10,500.00 | $10,900.00 | $11,000.00 |
| Equipment Rental for Jobs | $97,000.00 | $115,000.00 | $118,000.00 | $125,000.00 | $130,000.00 |
| Other Construction Costs | $2,500.00 | $2,500.00 | $2,500.00 | $2,700.00 | $2,700.00 |
| Subcontractors Expense | $425,000.00 | $445,000.00 | $485,000.00 | $498,000.00 | $500,000.00 |
| Tools and Small Equipment | $10,000.00 | $10,000.00 | $10,000.00 | $10,500.00 | $10,800.00 |
| Worker's Compensation Insurance | $36,000.00 | $36,000.00 | $36,500.00 | $36,900.00 | $37,000.00 |
| Total COGS | $1,494,300.00 | $1,609,700.00 | $1,666,452.00 | $1,690,800.00 | $1,700,500.00 |
| | | | | | |
| Gross Profit | $1,564,700.00 | $1,643,350.00 | $1,670,240.00 | $1,725,200.00 | $1,744,500.00 |
| | | | | | |
| **Expense** | | | | | |
| Auto/Small equipment repairs | $22,000.00 | $27,000.00 | $28,000.00 | $32,000.00 | $32,000.00 |
| equipment parts | $9,600.00 | $9,600.00 | $8,500.00 | $9,000.00 | $8,900.00 |
| Repairs and Maintenance | $55,000.00 | $62,000.00 | $64,000.00 | $64,500.00 | $65,000.00 |
| Dues and Subscriptions | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Business License | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| Permits | $1,200.00 | $1,500.00 | $1,500.00 | $1,600.00 | $1,300.00 |
| Accounting | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 | $8,500.00 |
| Trash Removal | $1,512.00 | $1,512.00 | $1,520.00 | $1,525.00 | $1,530.00 |
| Legal | $12,000.00 | $11,000.00 | $11,500.00 | $12,000.00 | $12,000.00 |
| Auto and Truck expense | $10,000.00 | $12,500.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Fuel expense (Auto/off road) | $38,000.00 | $39,000.00 | $42,000.00 | $40,000.00 | $41,500.00 |
| Business Licenses and Permits | $7,962.00 | $7,500.00 | $7,952.00 | $7,500.00 | $7,400.00 |
| Computer and Internet Expenses | $4,200.00 | $4,500.00 | $4,600.00 | $4,800.00 | $4,900.00 |
| General Liability Insurance | $48,000.00 | $48,000.00 | $50,000.00 | $52,000.00 | $53,000.00 |
| Officer Health Insurance | $32,316.00 | $33,000.00 | $33,500.00 | $34,000.00 | $34,500.00 |
| Other Health Insurance | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| Office Supplies | $2,728.00 | $2,000.00 | $1,800.00 | $1,900.00 | $2,000.00 |
| Payroll Expenses | | | | | |
| Salaries- Other | $456,000.00 | $475,000.00 | $480,000.00 | $485,000.00 | $499,000.00 |
| Salaries- Officers | $216,000.00 | $216,000.00 | $220,000.00 | $225,000.00 | $230,000.00 |
| Payroll Taxes | $195,000.00 | $198,000.00 | $200,000.00 | $210,000.00 | $215,000.00 |
| Postage and Delivery | $240.00 | $240.00 | $240.00 | $240.00 | $240.00 |
| Reserve | $10,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 |
| Professional Fees | $14,892.00 | $14,500.00 | $14,000.00 | $13,500.00 | $14,500.00 |
| Rent Expense (shop) | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 | $36,000.00 |
| Taxes (property) | $37,000.00 | $37,000.00 | $38,500.00 | $39,000.00 | $39,500.00 |
| Telephone Expense | $21,600.00 | $21,000.00 | $20,500.00 | $21,000.00 | $20,500.00 |
| Utilities | $11,663.00 | $11,700.00 | $11,800.00 | $11,600.00 | $11,900.00 |
| Total Expense | $1,256,213.00 | $1,299,852.00 | $1,322,212.00 | $1,348,465.00 | $1,376,970.00 |
| | | | | | |
| Net Ordinary Income | $308,487.00 | $343,498.00 | $348,028.00 | $376,735.00 | $367,530.00 |
| Life Insurance Reimbursement | ($47,200.00) | ($47,200.00) | ($47,200.00) | ($47,200.00) | ($47,200.00) |
| | | | | | |
| Net Income | $261,287.00 | $296,298.00 | $300,828.00 | $329,535.00 | $320,330.00 |
| | | | | | |
| Unsecured Debt plan payment | ($26,861.29) | ($26,861.29) | ($26,861.29) | ($26,861.29) | ($26,861.29) |
| IRS | ($7,228.44) | ($14,456.87) | ($21,685.31) | ($43,370.62) | ($57,827.50) |
| Spotsylvania County 2020 | ($2,145.91) | ($8,583.65) | ($12,875.45) | ($19,313.20) | |
| Spotsylvania County 2021(1st half) | ($900.00) | ($1,800.00) | ($3,600.00) | ($5,400.00) | ($6,300.00) |
| Blue Ridge Bank | ($127,829.84) | ($161,744.76) | ($161,744.76) | ($161,744.76) | ($161,744.76) |
| Ford Lease | ($10,758.84) | ($9,050.00) | | | |
| Ford Auto loans | ($21,227.66) | ($10,669.20) | ($10,669.20) | ($10,669.20) | ($10,669.20) |
| Komatsu topcon laser | ($4,191.24) | ($4,191.24) | ($4,191.24) | ($3,143.43) | |
| M&T bank | ($7,406.04) | ($7,406.04) | ($7,406.04) | ($7,406.04) | ($4,320.19) |
| Cat Financial  Roller | ($18,000.00) | ($18,000.00) | ($18,000.00) | ($18,000.00) | ($18,000.00) |
| Wells Fargo | ($8,412.00) | ($7,224.00) | ($7,224.00) | ($7,224.00) | ($7,224.00) |
| SBA | ($7,866.48) | ($7,866.48) | ($7,866.48) | ($7,866.48) | ($7,866.48) |
| administrative | ($18,000.00) | ($18,000.00) | ($18,000.00) | ($18,000.00) | ($18,000.00) |
| Total: | $459.26 | $444.47 | $704.23 | $535.98 | $1,516.58 |

SKS Construction, Inc.

## Exhibit C

| Creditor | Payment Frequency | Payment duration | Total of all plan payments | Claim |
|---|---|---|---|---|
| A&B Kearns | Quarterly | 5 years (20 Quarters) | $ 4,730.00 | $ 43,000.00 |
| AIT, LLC | Quarterly | 5 years (20 Quarters) | $ 398.75 | $ 3,625.00 |
| All American Paving and Sealing | Quarterly | 5 years (20 Quarters) | $ 1,375.00 | $ 12,500.00 |
| American Shoring, Inc. | Quarterly | 5 years (20 Quarters) | $ 2,833.93 | $ 25,763.00 |
| Anariba Concrete | Quarterly | 5 years (20 Quarters) | $ 966.24 | $ 8,784.00 |
| Carter Machinery | Quarterly | 5 years (20 Quarters) | $ 19,907.88 | $ 180,980.77 |
| CAT Commercial Rev Acct | Quarterly | 5 years (20 Quarters) | $ 6,508.81 | $ 59,171.00 |
| Colonial Construction Materials | Quarterly | 5 years (20 Quarters) | $ 1,858.65 | $ 16,896.84 |
| CP&P | Quarterly | 5 years (20 Quarters) | $ 356.07 | $ 3,237.00 |
| Fullerton and Knowles | Quarterly | 5 years (20 Quarters) | $ 665.06 | $ 6,046.00 |
| Gemini Land Development, LLC | Quarterly | 5 years (20 Quarters) | $ 9,295.00 | $ 84,500.00 |
| Greenway Hydroseeding | Quarterly | 5 years (20 Quarters) | $ 7,106.33 | $ 64,603.00 |
| IRS unsecured claim | Quarterly | 5 years (20 Quarters) | $ 2,258.55 | $ 20,532.27 |
| James River Equipment | Quarterly | 5 years (20 Quarters) | $ 3,823.16 | $ 34,756.00 |
| LB Water Service | Quarterly | 5 years (20 Quarters) | $ 35,587.70 | $ 323,524.59 |
| Liberty Equipment | Quarterly | 5 years (20 Quarters) | $ 2,154.79 | $ 19,589.00 |
| Lookout Safety Co. | Quarterly | 5 years (20 Quarters) | $ 3,033.25 | $ 27,575.00 |
| Luck Stone Corporation | Quarterly | 5 years (20 Quarters) | $ 2,186.58 | $ 19,878.00 |
| McLung Logan Equipment | Quarterly | 5 years (20 Quarters) | $ 8,775.25 | $ 79,775.00 |
| Michaels Towing and Recovery | Quarterly | 5 years (20 Quarters) | $ 1,244.98 | $ 11,318.00 |
| Ricky Hairfield Trucking | Quarterly | 5 years (20 Quarters) | $ 1,378.96 | $ 12,536.00 |
| Sullivan, Donahoe, and Ingalls | Quarterly | 5 years (20 Quarters) | $ 1,963.49 | $ 17,849.95 |
| Sunbelt Rentals | Quarterly | 5 years (20 Quarters) | $ 1,061.83 | $ 9,653.00 |
| Superior Paving Corp. | Quarterly | 5 years (20 Quarters) | $ 1,374.23 | $ 12,493.00 |
| The Rigging Box | Quarterly | 5 years (20 Quarters) | $ 655.38 | $ 5,958.00 |
| United Rentals, Inc. | Quarterly | 5 years (20 Quarters) | $ 3,131.61 | $ 28,469.17 |
| Virginia Paving Company | Quarterly | 5 years (20 Quarters) | $ 2,803.36 | $ 25,485.06 |
| Walker Sand and Stone | Quarterly | 5 years (20 Quarters) | $ 2,051.83 | $ 18,653.00 |
| Water Management Solutions | Quarterly | 5 years (20 Quarters) | $ 884.51 | $ 8,041.00 |
| Xylem Dewatering Solutions | Quarterly | 5 years (20 Quarters) | $ 3,935.25 | $ 35,775.00 |
| | | | $ 134,306.44 | $ 1,220,967.65 |